IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYRONE R. WATSON,<br><br>                    Petitioner,<br><br>vs.<br><br>RAYMOND SHANLEY, Superintendent,<br>Coxsackie Correctional Facility,<br><br>                    Respondent. | No. 9:19-cv-00275-JKS<br><br>MEMORANDUM DECISION |

Tyrone R. Watson, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Watson is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Coxsackie Correctional Facility. Respondent has answered the Petition, and Watson has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On December 18, 2012, Watson was charged with five counts of third-degree criminal sale of a controlled substance, six counts of third-degree criminal possession of a controlled substance, and criminally using drug paraphernalia after an undercover police officer, having been introduced to Watson by a confidential informant ("CI"), purchased cocaine from Watson during five separate controlled buys. After Watson was arrested and a search warrant executed, drug paraphernalia was discovered in Watson's residence.

Watson denied the charges and proceeded to a jury trial. At the close of the People's case-in-chief, Watson moved to dismiss the indictment on the ground that the People had failed

to locate and produce the CI for trial. County court denied the motion, and the matter was submitted to the jury. The jury found Watson guilty as charged. The court sentenced Watson to an aggregate determinate term of 18 years' imprisonment, to be followed by three years of post-release supervision.

Through counsel, Watson appealed his conviction, arguing that: 1) the trial court erred in failing to dismiss the indictment based on the CI's unavailability for trial; 2) the trial court erred in granting the People's *Molineux*[1] application seeking to introduce evidence of Watson's prior bad acts; 3) the trial court erred in granting the People's *Sandoval*[2] application seeking permission to cross-examine Watson about six prior convictions in the event he testified; and 3) the imposed sentence was unduly harsh and excessive, and should be reduced in the interests of justice. The Appellate Division of the New York Supreme Court unanimously affirmed the judgment against Watson in a reasoned opinion issued on May 11, 2017. *People v. Watson*, 55 N.Y.S.3d 460, 465 (N.Y. App. Div. 2017).

Proceeding *pro se*, Watson then moved to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the grounds that: 1) the prosecutor committed misconduct by a) misrepresenting the evidence, b) falsely informing Watson as to his indictment date, and c) making improper and prejudicial references on summation; 2) trial counsel rendered

---

[1] *People v. Molineux*, 61 N.E. 286 (N.Y. 1901) (the New York procedure for determining in advance whether evidence of prior crimes is probative for the purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common scheme or plan, or 5) identity, and for determining whether that probative value outweighs the prejudicial effect).

[2] *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (the New York procedure under which the trial court determines, in advance, whether evidence of prior convictions is admissible in the event that the defendant testifies).

ineffective assistance by failing to a) object to the prosecution's misrepresentation of the evidence and b) investigate the location of the CI; and 3) Watson is actually innocent of the crimes for which he was convicted. The county court denied the motion in a reasoned, unpublished opinion issued on September 11, 2018. The Appellate Division denied leave to appeal without comment on January 16, 2019.

Watson then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus in this Court on February 22, 2019. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Watson argues that: 1) the trial court erred in not dismissing the charges based on the People's failure to produce their CI at trial; 2) the trial court erred in admitting evidence of Watson's "possession of a vastly larger amount of cocaine 10 years prior to the events alleged in the current charges and under markedly different circumstances;" 3) the court erred in its *Sandoval* ruling by failing to properly consider the circumstances of the instant case to the prior bad acts; and 4) the sentence imposed is harsh and excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for

not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

**A.    Failure to Produce the CI** (Ground 1)

Watson first argues that the trial court erred in refusing to dismissal the charges against him when the People failed to produce the CI. The Appellate Division rejected this claim on direct appeal, reasoning that the People made sufficient steps to locate the CI, and Watson failed to meet his burden of establishing that the proposed testimony of the CI would be exculpatory or create a reasonable doubt as to the reliability of the People's case. *Watson*, 55 N.Y.S.3d at 1385. The appellate court further concluded that dismissal was not warranted because the trial court

gave Watson a missing witness charge as to the CI even though he was not entitled to it. *Id.* at 1386.

Watson fails to show that the Appellate Division's determination was contrary to, or an unreasonable application of, clearly-established Supreme Court authority. To the extent that Watson claims that the decision was erroneous under the New York law requiring a duty of production, or dismissal of the prosecution's case, where the People "have intentionally procured the disappearance of the [CI] . . . or have exerted inadequate efforts to locate" her, *People v. Jenkins*, 360 N.E.2d 1288, 1291 (N.Y. 1977), *declined to follow on other grounds by People v. Scarborough*, 402 N.E.2d 1127 (N.Y. 1980), such claim fails because it does not allege an error of constitutional dimension.

Moreover, federal law does not require mandatory production. *See United States v. Super*, 492 F.2d 319, 321 (2d Cir. 1974). Rather, in response to a timely request, the Government "must accord reasonable cooperation in securing the [CI's] appearance where his testimony might substantiate a claim of the defense." *United States v. Dixon*, 112 F.3d 506 (2d Cir. 1996) (citing *United States v. Tuck*, 380 F.2d 857, 859 (2d Cir.1967)). Here, the record fully supports that the People made good faith efforts to locate the CI once it became apparent that Watson might want to call the CI as a witness in support of his agency defense. As the Appellate Division explained, "[w]hen reached by telephone, the CI stated to a law enforcement officer that she had been threatened by [Watson's] friends, that she had, therefore, "fled the area" and that she would not return or reveal her location for fear of reprisal. The record also includes some indication that County Court issued a judicial subpoena directing the CI's appearance in court." *Watson*, 55 N.Y.S.3d at 463. Where the government has made "reasonable efforts to locate" the

informant and there is no evidence that "the government acted in bad faith to render [informant] unavailable," a habeas petitioner cannot show a violation of his Sixth Amendment right to compulsory process or deprivation of his right to a fair trial.  *Jacobson v. Henderson*, 591 F. Supp. 503, 510 (S.D.N.Y.1984).  Lacking any clearly established Supreme Court authority requiring more, it cannot be concluded that the appellate court's ruling contravened or unreasonably applied federal law.  *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a claim, a federal court cannot find a state court ruling unreasonable).  Watson is therefore not entitled to relief on this ground.

**B.**     **Evidentiary Errors** (Grounds 2, 3)

Watson next alleges that the trial court made two evidentiary errors.  The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair trial.  *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

Watson first argues that the trial court's *Molineux* ruling, which allowed the prosecution to introduce evidence of Watson's 2003 conviction for second-degree criminal possession of a

controlled substance once Watson asserted in opening argument that he had secured the cocain as an agent of the undercover police officer and the CI, violated his rights to due process and a fair trial. But Watson's claim is not cognizable on federal habeas review. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *see Estelle*, 502 U.S. at 70 ("[W]e need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial."); *see also Roldan v. Artuz*, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000) (citations omitted) ("A habeas claim asserting a right to relief on *Molineux* grounds must rise to the level of constitutional violation . . . because *Molineux* is a state law issue.").

And even if it were cognizable, Watson would not be entitled to relief because the claim is without merit. Under New York law, it is well-settled that a defendant who asserts an agency defense opens himself up to the presentation of *Molineux* evidence that would refute that defense. *See, e.g.*, *People v. Small*, 904 N.E.2d 811, 812 (N.Y. 2009). The probative value of the evidence must outweigh the potential prejudice to the defendant, which is determined by the trial court. *People v. Alvino*, 519 N.E.2d 808, 812 (N.Y. 1987).

In this case, as the Appellate Division concluded on direct appeal, the trial court "aptly concluded that [Watson's] 2003 conviction was relevant and material to refuting [his] claimed

agency defense, which implicated the issue of whether [Watson] possessed the drugs with the intent to sell them to the undercover police officer," and "engaged in a proper weighing of the probative value versus prejudicial effect of admitting evidence of this 2003 conviction." *Watson*, 55 N.Y.S.3d at 463-64. Accordingly, Watson is not entitled to relief on this ground.

Watson also contends that the trial court's *Sandoval* ruling violated his constitutional right to a fair trial. In *Luce v. United States*, the Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." 469 U.S. 38, 43 (1984). When a defendant does not testify, "[a]ny possible harm flowing from a . . . ruling permitting impeachment by a prior conviction is wholly speculative." *Id.* at 41. Furthermore, "[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor,' a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." *Id.* at 42 (quoting *New Jersey v. Portash*, 440 U.S. 450, 467 (1979) (Blackmun, J., dissenting)). While *Luce* involved a ruling on a motion *in limine* pursuant to Rule 609(a) of the Federal Rules of Evidence, its holding has been applied to *Sandoval* rulings because they involve similar considerations. *See Wilson v. Heath*, 938 F. Supp. 2d 278, 287 (N.D.N.Y. 2013) (noting that "*Sandoval* claims are barred from habeas review where . . . the petitioner failed to actually take the stand and testify at trial"); *Ponder v. Conway*, 748 F. Supp. 2d 183, 194 (W.D.N.Y. 2010) (citing *Luce*, 469 U.S. at 43). "Second Circuit law has created a bright-line rule . . . barring habeas relief for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not [to] testify." *Shannon v. Senkowski*, 00 Civ. 2865, 2000 WL 1683448, at *6-7 (S.D.N.Y. Nov. 9, 2000); *see also Andrews v. LeClaire*, 709 F. Supp. 2d 269, 278 (S.D.N.Y. 2010) (collecting cases).

Here, the prosecution made an application to the trial court seeking to question Watson, should he testify, about six prior convictions. The trial court held that, should Watson testify, which he did not, the prosecution could cross-examine him regarding certain facts of some of those convictions. The trial court would not allow the prosecution to cross-examine Watson as to his 1990 drug-related convictions. Because Watson did not testify, it would be a matter of pure conjecture for this Court to speculate as to whether the prosecution would in fact have sought to impeach him by inquiring into each bad act, how such testimony would have impacted the trial, and to what extent his decision not to testify was motivated by the trial court's *Sandoval* ruling. *See Luce*, 469 U.S. at 42. Thus, Watson is not entitled to relief on his *Sandoval* claim.

C.      **Harsh and Excessive Sentence** (Ground 4)

Finally, Watson challenges his sentence as overly harsh and excessive. It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Watson has never disputed, and does not dispute here, that he was sentenced within the applicable range for his offenses.

And to the extent that Watson's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences

for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'" *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)). Here, the 18-year sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). Accordingly, this Court is without jurisdiction to reduce his lawful state sentence.

## V. CONCLUSION

Watson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 7, 2021.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge